Good morning all. This morning we have the pleasure and privilege of two visiting Japanese jurists. They've come to observe our our procedures and they're in attendance at Notre Dame and University of Illinois. I'm going to turn to my distinguished colleague Judge Ripple to give an introduction about our Judge Flambeau, Judge Williams, distinguished members of the bar, ladies and gentlemen. I have the honor of introducing to you today two judges from Japan who have been sent by the Supreme Court of Japan to spend an entire year in the United States to study our system and to observe our system and how the lawyers and judges interact with each other in deciding the cases before us. Judge Sho Nakabachi is an assistant judge in the Tokyo District Court. He is currently studying this year at the University of Notre Dame as a visiting scholar. Next to him is Judge Takashi Ono who is an assistant judge of the Osaka District Court in the University of Illinois. Every year the judges, among other things, come to the court here and observe court and spent a great deal of time learning about judicial administration and we are very very pleased to have them with us. They ask us questions that we probably should be asking ourselves and we very much appreciate having that outside critique of our approach to the law and our approach to our work. And so we thank you ladies and gentlemen of the bar for sharing your day in court with them. Obviously they will not be participating in the deliberations of the court, but they will be observing. They have read the briefs and are thoroughly prepared to listen to the oral arguments. Thank you, Judge Rippon. Judge Rippon, good morning again and we'll proceed with today's arguments. The first argument today is Diffel-Nicholas and Godfrey-Kahn versus Lac de Flambeau, Mr. Hanson. Counsel. And may it please the court. My name is Tim Hanson and I represent the Lac de Flambeau band of Lake Superior Chippewa Indians and the Economic Development Corporation, a tribally owned company, commonly referred to together as the tribal parties. This case is on appeal from the issuance of a preliminary injunction. The injunction enjoined the sovereign tribe and the tribal parties from litigating their claims under tribal law and the tribal constitution in their tribal court. This court should vacate that injunction, order the plaintiffs to exhaust the narrow issue of whether the tribal court has jurisdiction over the non-members in the tribal court in the first instance, and then dismiss or stay the underlying district court case. The tribal parties presented a colorable claim of tribal court jurisdiction in the district court. Upon that showing, under National Farmers Union, exhaustion should therefore be required. Plaintiffs have failed to identify an applicable exception to the exhaustion doctrine and the district court applied none in its ruling. Exhaustion is particularly important here. The tribal court is considering issues of tribal law and a violation of our tribal constitution. The tribe itself is a party to the lawsuit. Ordering exhaustion fosters important federal policies, including respect for tribal legal institutions, recognizing the tribal courts role in self-government, the orderly administration of justice, and then the development of a record in tribal court in the first instance for its jurisdiction so that the district court on review can make its determination on the full record. Ordering exhaustion also avoids the procedural nightmare described in National Farmers Union and the absurd result this court criticized in Mazumdar. It also permits the state court, in conjunction with the tribal court, to conduct a Teague conference under Wisconsin law, which will help develop that body of law and foster comedy between the state and the tribal court bodies. If the case proceeds in district court, it will put the federal court in competition with the state court, which will be addressing many of the same issues at the same time, involving many, if not all, of the same litigants. It will force the district court to reach issues well beyond the narrow federal question of whether the tribal court has jurisdiction over the district court, over the district court plaintiffs, excuse me. At a minimum, the current injunction and the scope of a current injunction is simply too broad. We are not able to proceed against Stiefel at all, even though both Stiefel and the federal court suggested that misrepresentation claims would be appropriate in tribal court, and Godfrey has conceded Montana jurisdiction and we should be able to assert claims against Godfrey as well, but because of the nature of the scope of the injunction, we as a tribal party have been enjoined from proceeding in tribal court in any case that Saybrook or Stiefel is a party to. You mentioned Stiefel. Were all of Stiefel's visits to tribal land in connection with the bond transaction or were some related to the development project? They're hand-in-hand. They really were all related to the bond transaction because the bond transaction really was part and parcel with the Grand Slay Natchez project in Mississippi, but for example, if you look at the 5-2907 date, we had four members of Stiefel come to Trustland to do the initial pitch for the bond transaction in which Stiefel outlines the proposed structure of the deal, and that meeting took place at the Tribal Center on Tribal Trustland. That's in the Dave DeYoung deposition and it's in the supplemental appendix at page 1003. The second visit by Stiefel, DeYoung and pitched two proposals, again for the bond deal. 11-1507, four members from Stiefel and Saybrook, one person from Saybrook, met at the tribe's casino at the request of Saybrook to kick the tire, so to speak, and determine whether the casino would be adequate security for Saybrook's investment. On January 2nd of 2008, Kevin Shabilsky of Stiefel and Brian Pearson of Godfrey and Kahn appeared at a meeting in front of the Tribal Council to where they pitched the bond deal, made the representations that we've identified as in our misrepresentation case, and urged them to adopt the bond resolution in the tribal resolution to effectuate the bond transaction. Sometime in the fall of 2008, Dave DeYoung and Kevin Shabilsky answered additional questions at the I want to turn your attention for a moment to the form selection clause. Yes, which one? Well, that's what I want to talk to you about. Obviously, it varies, right, depending on the bond document? Correct. Yeah, well what if we find that one document, excuse me, one bond document contains the broad language that we find speaking to exclusive jurisdiction. What do we do with that? It's all part of the larger transaction, so does that relate only to that document or does that trump the whole argument about jurisdiction? Well, there's a couple of different issues in that question. One relates, I think, to the validity of the taken together, but I think before we even reach that issue, there is the question of exhaustion and tribal court jurisdiction because the form selection clauses do not confer or divest. The form selection clauses are not jurisdictional in nature. We've briefed that issue pretty extensively. I don't think it's really disputed. There's not a, the form selection clauses aren't really relevant to whether the tribal court has jurisdiction. That's really the narrow federal question in front of the district court is, does the tribal court, with reference to federal law, have jurisdiction over the non-members? Well, I'm looking at Tribal Agreement 5, where the language seems to me to be pretty broad about the tribe expressly submits to and consents to the state of Wisconsin, and in the event, but only in the event, that said district court fails to exercise jurisdiction, the courts of the state of Wisconsin where jurisdiction and venue are otherwise proper for the adjudication of any disputed controversy arising out of this agreement, obviously speaking to 5, Tribal Agreement 5, or do any other transaction in connection therewith to the exclusion of the jurisdiction of any court of the tribe? A couple of points there. Number one, the form selection clause in the first instance should be considered by the tribal court. Has the competency, has the ability to do that. That's the Mazumdar situation, where it's the court that is not identified as the proper forum to make a determination as to whether the case should be there in the first instance. And in fact, Judge Fletcher in tribal court has gone down that road and it started to do that analysis, and it's currently incomplete because the court was stopped, obviously. Number two, the... Well how much analysis would one need as to that document? Well, you anticipated my next statement. The form selection clause in the tribal agreement, or really any of the agreements, pertains to suits that arise out of the bond documents brought by Saybrook or the bondholder, or Wells Fargo's trustee on behalf of the bondholder. So those form selection clauses are being implemented and used currently by Saybrook, and we've not challenged those form selection clauses. They're proceeding in state court. Remember, the form selection clauses that we're referring to in the tribal court, and the language is similar in this regard, that it would be suit arising out of the bond transaction, the tribe has consented to venue and jurisdiction in the Western District, unless it lacks jurisdiction, and then the state courts. Saybrook originally, well there's a couple of lawsuits ago, but in the immediately preceding federal lawsuit, Saybrook and Wells Fargo and LDF acquisition sued in the Western District, sued the Economic Development Corporation in the Western District. Four claims arising out of the bond transaction, very similar causes of persuading the district court at that point that it lacked federal subject matter jurisdiction. There was no federal question because they did not seek a declaration that the bond documents were valid under IGRA. There was no diversity jurisdiction because as you drill down through the various LLCs, you find incomplete diversity. So that case then became essentially active in state court, and they're proceeding in state court. We've never said in the state court that Saybrook should exhaust its state court claims arising out of the bond transaction and related to unjust enrichment, misrepresentation, claims against Stiefel, claims against Godfrey. They only have in state court two claims that relate to the bond documents. They have a breach of the bonds against the Economic Development Corporation claim, and then they have a declaratory judgment guarantee against the tribe. Not a declaratory judgment that the guarantee is a valid document under IGRA, rather just a declaration that the tribe owes the obligation under the bonds in the event that the EDC defaults. We've never said that those claims have to be litigated in the first instance in the tribal court. We have other defenses. We've challenged the competency of the federal preemption, and we've challenged whether there's been a waiver of sovereign immunity, and we have other defenses, fraud, those types of things, but we've never challenged the forum selection clause in any of the documents as it applies to Saybrook's claims currently pending in state court. They are actively litigating in the selected forum. What we have done is to sue in tribal court on a very narrow issue related to tribal law, our gaming ordinances, and our Constitution, because as between the state court and the tribal court, it is our view that the tribal court is the only court with competency to decide those issues. There's really, when you look at these cases, there seems to be two species of exhaustion or two contexts in which the courts consider exhaustion. One would be a situation like we have in competing the potential for there to be a competition on the merits between a federal court and a tribal court, and the question then becomes, in the absence of a pending tribal court case, should the merits of the underlying litigation on the non-tribal plaintiffs, should they be forced to litigate or re-litigate in tribal court? That's not our situation at all. Where there is a pending tribal court case, and the only reason for the federal district court action is to challenge the district, excuse me, the tribal courts jurisdiction, that's the narrow federal question, and that's very different than what we have, that's, that is what we have here. We're not, we're not arguing that SABRC has to go to tribal court to litigate its claims, just that we have a right to litigate our claims under our Constitution, our laws, where we're a party in our tribal court. Well Mr. Hanson, you're also challenging the district courts view of sovereign immunity with regard to certain of the documents. We are, we are, and I don't know that, that the court needs to reach that issue if it orders exhaustion. If you order exhaustion, it avoids the thornier issues of sovereign immunity, especially on a truncated record where there was about a month's worth of discovery, and there was no consideration of the allegations of fraud, which the district court acknowledged would be a defense to the enforceability of the waivers of sovereign immunity. So even if we reach the IGRA question, we still can never resolve the enforceability of the waivers of sovereign immunity on this issue. The exhaustion doctrine is satisfied here, and to me, it's a prime candidate to go back to tribal court just on that issue, develop the full record, SABRC gets plenary review in the district court on the question of tribal court jurisdiction. Thank you. I'm happy to continue about if the court's interested in why we have a various theories. I mean, I think under any theory, we have presented a colorable claim of tribal court jurisdiction. We have, whether it's a treaty right, a retained right, property owner's right to exclude Montana 1, Montana 2, ample evidence in the record, even in the truncated record, to suggest a colorable claim of tribal court jurisdiction. And once we present that colorable claim of tribal court jurisdiction, we have to go back to the exhaustion and either dismiss or stay. And in either event, it never needs to reach the issue of our sovereign immunity, of IGRA, of fraud. Those are all issues, by the way, that are being litigated currently in state court. And as between state court and tribal court, the state court is deprived of the opportunity to conduct a Teague conference with the tribal court judge to decide what issues and what has jurisdiction to decide. Instead, the state court case has been selected by operation of the injunction as the venue, and our constitutional claims don't have a venue to be heard. No one will be able to decide those claims. I see I'm into my rebuttal time, so unless there are further questions, I'll take a seat. Okay, thank you, Mr. Hanson. Thank you very much. Mr Burger. Mhm. Okay. Mm Okay. That's as good as it gets. Good morning. May it please the court. My name is Charles Bergen. I represent Saybrook Fund Investors and the fund that actually holds the bonds that are at issue here. LDF acquisition. I also represent Wells Fargo, which has acted as trustee in this matter. The court, at least I believe the court is familiar with the underlying facts. Saybrook is the party that led $50 million in good faith to a tribal party that was already in debt. They had already spent the money on an unwise acquisition of a non tribal casino in Natchez before they came to us. We bailed them out. Let me say a quick word about the other parties as well, because Mr Cahill wants to speak on behalf of Stiefel and Mr Clark for Godfrey and Khan. Stiefel it's claimed was the financial advisor, at least was the initial purchaser of the bonds. We have a claim against them in state court for selling us bonds that violated their warranties. We also have a claim against Godfrey in state court because they gave opinion letters that said we would not have any difficulties getting federal approvals. And as this court knows from the earlier Wells Fargo case, those opinions turned out to be terribly, terribly wrong, and we relied upon. So we are in a somewhat different situation than the other two parties here. And frankly, in the preliminary injunction hearing before Judge Conley, Mr Hanson conceded that the only reason they're in the tribal court case, parties to the tribal court case, is because we sued them in state court in Wisconsin, and he wanted a complete resolution. But make no mistake, the issue in tribal court is exactly the reverse of our attempts to collect on bonds that we bought in good faith seven years ago from the tribal EDC, Economic Development Corporation. Let me turn to, I think, what is should be subject to no misunderstanding. Mr. Hanson talked about various visits to tribal lands. There is a stipulation in the record, Supplemental Appendix 1086, 1087, that talks about the entire extent of the Sabert Party's visit. On November 15th, Scott Bayless, who is one of our principals, briefly visited the reservation of the tribe. This isn't testimony, this is stipulation by us and the tribe together. This visit occurred at least two weeks before the parties agreed to enter into exclusive negotiations regarding the bond purchase. This visit predated the existence of LDF acquisition, the entity created to hold the bonds, which was formed on or about January 10th, 2008. The visit also predated any commitment to loan money to the tribe or EDC, which occurred on January 18th, 2008, by more than two months. And it goes on, it says he was there for five hours, it talks about the few individuals he spoke with, it repeats. Again, this is a stipulation that there was no negotiation. And it repeats that Bayless's brief visit was for no purpose other than to gather information. Bayless did not engage in any negotiations with the tribe and or its corporation. Bayless never had been on the reservation before and he never returned. The scope of Indian tribal jurisdiction is not long arm jurisdiction, it's not personal jurisdiction at all. It is subject matter jurisdiction. And I think the best way to look at it is in Judge Ripple's opinion in Payday Loans, Jackson v. Payday Loans from last summer, where he is quoting from Plains Commerce. And he says, and he's quoting Plains Commerce Bank, the Supreme Court opinion, tribal sovereignty, it should be remembered, is a tribal jurisdiction. The Bill of Rights does not apply to the Indian tribes. Indian courts differ from traditional American courts in a number of significant respects. And non-members have no part in tribal government. They have no say in the laws and regulations that govern the tribal territory. Consequently, those laws and regulations may be fairly imposed on non-members only if the non-member has consented, either expressly or by his and italics. The regulation must stem from the tribe's inherent sovereign authority to set conditions upon entry, preserve tribal self-government, or control internal relations. None of those factors are present here. So the notion that there is some colorable basis for jurisdiction doesn't exist based, if nothing else, on the precedence of this court and the stipulated facts. But let me say another word about the claim in state court. There are no claims against Stiefel, and there are no claims against Godfrey. There's not a claim for misrepresentation there against Stiefel, nor against Godfrey for malpractice. The claim is against our documents, seeking to have them held invalid. And until 2013, after the federal court held that it had no subject matter jurisdiction because of filed the initial lawsuit. We tried to amend that to bring the real parties and interests into that. We were denied that opportunity. We filed a new lawsuit, and there there was no federal jurisdiction. And we have a state lawsuit, which did have jurisdiction. Only after all that was done, all those lawsuits had been filed, did the tribe file its tribal action. And the only way it could do that was by amending its tribal constitution. It amended its constitution after Judge Conley's ruling that he had no federal jurisdiction, specifically to allow jurisdiction over any claims involving the tribe as a party. And they set up this procedure where they could name the judge pro tem, one case only. And the judge they chose was a well-known activist who says, we don't need to follow the constitution. And indeed, in the opinion that Mr. Hanson cited, he says, I'm not going to look at federal law. I'm going to look at tribal law. I'm going to look at the Sioux or the Choctaw or the Cherokee before I even consider the U.S. Supreme Court. That is not what we bargained for. And this takes us back to Alzheimer and Gray. Alzheimer and Gray is a touchstone. It's the foundation of the doctrine in this district. And this court in Alzheimer and Gray said there's no need to exhaust tribal remedies under National Farmers Union where the Indians and non-Indians agree to a forum selection clause. Here, there's nine different agreements, seven by EDC and two by the tribe itself, to a forum selection clause. Many of those, not all of them, but many of them say exclusively in federal court where jurisdiction is lacking in federal court and in state court, but not in tribal court. And it's said again and again and again. Alzheimer talks about the importance of honoring Indian contracts and honoring their intent because if you can't rely on contracts with them, no one will do business with them. This was not an unsophisticated tribe. They had Godfrey and Tom, superb lawyers from Wisconsin, preeminent, guiding them and advising them on this transaction. If a transaction guided by Godfrey and Tom that specifically says the acts here took place off the reservation, we agree you will never have to be in tribal court, we agree that the federal courts or failing that the courts of Wisconsin will govern, if those contracts can't be honored, then really nothing can. I have a light on it. I have much more to say, but let me just close with saying that in this court, through Judge Posner, highlighted the importance of this and said this isn't a case where the tribal parties have been hoodwinked, where they've hoodwinked unsophisticated Indians into giving up the tribal immunity. These people have sophisticated advisors in Stiefel and Saberk lent the money in good faith, and that good faith should be honored by not forcing them to go to tribal court. I have more to say if the court wants or is interested on sovereign immunity. That's an issue that's very important to us. We've covered it in the briefs extensively. I would particularly want to highlight the Chevron argument Judge Ripple's footnote 15 in Wells Fargo set off a chain of curiosity that continues to this day, and we've tried to express our view on that in the briefs. I'm happy to discuss it, but I also see that my time is very near up. We hope the court will honor these contracts, look at what the parties actually stipulate the facts are, and find that no exhaustion is necessary, no jurisdiction lies, and have the parties honor the contracts. Thank you. Thank you, Your Honor. May it please the court, honorable jurists. My name is Brian Cahill, and I represent Stiefel-Nicholson Company and Stiefel Financial Corp. I want to first address a couple statements that were made by Mr. Nicholson. One is that the tribe cannot proceed against Stiefel at this point in its claims against Stiefel. I want to be clear that the tribe is currently proceeding against Stiefel in both the state court and also with a conditional counterclaim in the federal court action that's pending as well. They are in fact proceeding with their claims against Stiefel. Number two, the claims of misrepresentation and the like are not even before the tribal court, so they have full access to their ability to bring a claim against Stiefel. Secondly, and this ties together with the fraud, the supposed fraud allegations that were raised in this briefing. Mr. Hansen said that sovereign immunity waiver cannot be reached as the enforceability at this time on this record because of the lack of the record related to the supposed fraud. But the lack of a full record as to fraud is not the fault of anyone but the tribal parties. The court at the start of this litigation in the Western District sent out procedures to all the parties and all the parties were aware of the circumstances that the preliminary injunction hearing would be related and would deal only with those issues that were part of the proposed finding of facts of the parties. Proposed findings of facts were submitted by all of the parties, by all of the plaintiffs. And after that, the tribal parties then submitted theirs, including what they called their proposed defendants' rebuttal facts. During that time, there had been a number of proposed findings of facts as to the enforceability of the bond documents and the tribe at that point put in rebuttal proposed facts that the bond documents were void due to a failure to obtain approval of these as management contracts. Nowhere, nowhere in the proposed findings of facts by the tribe was there ever any use of the word fraud or misrepresentation. It does not exist. What happens then is that, though that was filed by the tribal parties in June of 2013, things were put on hold while there was an interrupted appeal that you're aware of. And then in February of 2014, February 21st, three weeks before the hearing date, in an email, the issue of fraud was first raised to counsel for the plaintiffs. And the court properly did not allow that to proceed at that point. It allowed them to introduce evidence, but it would only be evidence, it would only be relevant to the extent, and only to the extent, that it was in the proposed findings of fact. If that had not been the case, it would have been an entirely different hearing. If that, if the proposed findings of fact by the tribe had included fraud allegations, there would have been substantially more discovery, and there would have been a hearing that would have included not just argument with the court and then some some declarations of some of the parties. It would have had live witnesses, would have been in a here. The only one who caused this problem is the tribe. They still have the ability to do this, as the District Court recognized. When this comes back and it becomes time eventually for this to go to a permanent injunction, they will have all the opportunity in the world to argue this. This is a preliminary injunction that we're at right now. They had the opportunity to raise it, they did not. In their reply brief, they say that Stiefel does not contest, it was error for the District Court to defer validity of the waivers of sovereign immunity until after the ruling on the sovereign immunity waiver. They said that we have conceded that and that's simply not true. And it's, the fact that it is, it was front and center in our brief, it is Roman numeral one in Stiefel's brief at pages 19 to 21. I want to be clear that there was no fraud by because if we had had the opportunity to show this, we've shown that it is just simply not true. But that was not what was before the court. I'd like to talk briefly about the application of Montana exceptions here, and there's basically two aspects to this I'd like to address. First off, the tribal court action does not seek to regulate Stiefel's conduct. Stiefel was asked to come to the court on one occasion by the tribe, but the key to the Montana exception, the first exception, is that the tribal court action must be an attempt to regulate the conduct of the defendant, in this case Stiefel. It in no way attempts to regulate our conduct. There is no nexus between Stiefel appearing on tribal land to answer questions and to not pitch, but to propose to the tribe that they would help them with their investment. There is nothing in the tribal court action that tries to regulate the conduct of Stiefel. All they did was interesting. They threw allegations of fraud into the tribal court complaint, but never asked for relief. Didn't ask the court to void the bond documents because of fraud by Stiefel. Didn't ask the tribal court to give misrepresentation damages. Didn't ask for reformation of the contract. Didn't ask for rescission of the contract based on anything that Stiefel did. All they did is they made allegations about this. If this were the case, and that supposedly would give Montana jurisdiction under the first exception, that would mean that any time that the tribe has a contract that would not be subject to tribal court jurisdiction, all it has to do is make allegations of fraud in the tribal court complaint, not ask for any relief, but then say that gives us jurisdiction at this point. It's simply untenable. It's simply untenable. There was no Stiefel conduct that is in any way related to the tribal court action. And also it's important to remember that Montana's first exceptions requires an entry into consensual relationship when you have to look at that consensual relationship and what was the consensual relationship at stake here? The consensual relationship was Stiefel will be the initial purchaser of these bonds with the understanding that if there is any dispute arising out of these bonds, it will be resolved not in tribal court, it will be resolved in either federal court or the Wisconsin state courts. That was the consensual relationship that we're talking about here. You have to look at that. They waived sovereign immunity, waived exhaustion, and they entered into a consensual relationship that this was not a transaction involving tribal lands. They applied Wisconsin law, they made representations that the transaction did not violate any ordinance and did not violate their Constitution. This was not a tribal matter that is subject to tribal court jurisdiction. As to exhaustion, I just want to just address this very, very briefly. Under exhaustion, the key is not dependency of tribal court action. That's not what's at stake. The question becomes, it's the futility that's involved here. And the futility in this case is that there is a clear waiver of sovereign immunity and a clear waiver of tribal court jurisdiction, particularly in the bonds. And that's the key here. This is an action, this action relates to the bonds. Now they have raised a case with which I'm also familiar, which is the Lac Courte Array case, which they have cited in which Judge Conley also ruled, gave a conditional ruling, was subject to additional briefing. The briefing was submitted and a decision was never rendered in that as to actually resolving it. But it was a very different kind of case, because it was not an action on the bond at all. And it was not an action to, in any way, take the bond, to void those bond documents. It was an action for damages against fee for supposed misrepresentation. Had nothing to do with the bond documents. It dealt with everything outside of the bond documents. Very different type of situation. Here, it's very clear, it's an action on the bond. Tribal court is excluded. That's in the bonds themselves. It's in the limited offering memorandum as well. It is excluded. It would be futile for us to have to go to tribal court, go through the entire trial of this matter through tribal court, and then come back and have to do this all over again. It makes no sense. It's the case here when it comes to exhaustion. I want to address one thing about the treaty rights as well. Oh, I'm sorry. I didn't see the light. I'll ask you to do it briefly, but you certainly can... No, that's all right. That's fine. I'll stop at that point. I appreciate it. Thank you. All right. Thank you, Mr. Cahill. Mr. Clark. Good morning, Your Honors. On behalf of Godfrey & Kahn, we're asking you to endorse that portion of Judge Conley's order that did not include Godfrey & Kahn. I don't intend to comment on the exhaustion issue, except to say, Your Honors, that I really urge you to read Alzheimer, because I think Alzheimer basically controls the exhaustion question. Under Alzheimer, it's clear that if you've got a clearly expressed forum selection clause, like we have in the bonds and in the tribal agreement, which are the only two documents that are really an issue here, then there's no place for exhaustion, because the parties have agreed on the forum, and therefore the exhaustion doctrine, the rationale for the exhaustion doctrine, falls. We think that Judge Conley got off track with regard to the issues surrounding Godfrey & Kahn, because he really didn't apply, as he should have, this court's ruling in Sagogon. Sagogon is another key case here, and I really urge you to read that case, because I think it answers a lot of questions, and it simplifies these issues to the point that we really get down to what the district court should have been deciding in this case, rather than all of the other issues that the district court got mired in. Sagogon teaches, first of all, that forum selection clauses, like the ones we have here, are in fact express waivers of sovereign immunity. You don't have to look at these other documents, or you don't have to look at the enforceability of the other documents, because by entering into the forum selection clauses, like these, exclusive of tribal court jurisdiction, the tribe has basically waived sovereign immunity. If you create a right to sue, and if you look at the language, you read the language in the bond, it clearly creates a right to sue in the forum selection clauses in these chosen forums, you create a right to sue, you have waived sovereign immunity. Sagogon says that, Ninogrit in the Seventh Circuit said that, I'm sorry, the Ninth Circuit, the Ninogrit case, said the same thing, he said the Ninth Circuit observed it was plain as the nose on your face, and the United States Supreme Court, in the C&L Enterprises case, adopted whole hog the rationale of Sagogon, and agreed that to be sued in a specified forum, as we have here, is in and of itself a waiver of sovereign immunity. Sagogon is chief. I guess the next question, Mr. Clark, is whether that waiver applies to the situation your client finds itself in. Yeah, we believe it does, Your Honor, because it's hard to conceive of anybody more closely related to this transaction than Godfrey and Kahn was. Is there anything in the particular language of those clauses that would make one think that applied to someone acting as bond counsel? No, but in all the cases where the courts have determined whether or not they should apply a forum selection clause to a consignator, that fact doesn't exist, and the tests that the courts have used, and most recently in Adams, this court, I think, adopted a very pragmatic approach to this. The question is, you know, closely related, are they intertwined in the transaction? And you look at issues of affiliation, and you look at issues of mutuality, and like in the Adams case, that this case, all these issues should be decided in one forum. I think that's something that's pretty self-evident. This shouldn't be fragmented in different courts. Certainly the parties to the agreements, their cause of action against your client, I can see that as being inextricably bound up, or whatever you want to say, but how about the tribe's cause of action against your client? That's also inextricably bound up, Your Honor, because we only came into this And so the whole issue with regard to any potential malpractice on the part of Godfrey and Kahn is inextricably tied up in the issue of whether there was reasonable care in connection with the opinions that Godfrey and Kahn gave, even though they turned out, because of this court's decision to be wrong, that doesn't mean that they were negligent. All these issues have to be developed together, otherwise you're going to have a terribly fragmented and Of course, I suppose antecedent to this question is the question of whether the court should or should not have exercised supplemental jurisdiction. And in that regard, Your Honor, we believe that, with respect, the judge abuses discretion. But this gets back to Sagagan again, because the reason why Judge Connolly felt that maybe he wasn't, at least for now, going to exercise supplemental jurisdiction was because he believed that he had to get into all these issues about the enforceability of the documents. But he doesn't. Under Sagagan and under Mazumdar, and now also under your most recent Adams case, it's clear, and this is where I think that the tribe is really muddling this up, it's clear under those cases that a forum selection clause survives, not withstanding allegations of fraud, or notwithstanding that the underlying documents may be void because of, in this case, the EGRA rule. And the only way you can get around a forum selection clause, under the clear holdings of this rule, is by fraud. And there's absolutely no allegation that there was any misrepresentation or any fraud involved in the formation of these forum selection clauses. So as a result of that, the forum selection clauses stand regardless. Judge Connolly didn't have to get into all these issues about the enforceability of the documents. He didn't have to worry about... Well, suppose he did, though. Suppose he did have to get into those documents. Does that really make any difference with respect to the supplemental jurisdiction analysis? The judge thought so. Well, he thought so, and then it gets into the question of his discretion. Was he correct? Yeah, it's a question of his discretion, but he has to exercise it prudently. Yes, he does. So my question is, I mean, you see, at one point he says, well, this would be a lot of new work. I'll have to get into this. We all have a lot of new work. But the fact of the matter is, well, why should he not But he should have done, he should have weighed the fact that he had to do a little extra work, assuming that he even had to get into these documents, against the concepts of judicial efficiency. That's the touchstone, or one of the touchstones of supplemental jurisdiction, is judicial efficiency. And where's the judicial efficiency in leaving Godfrey and Kahn out of a order that grants a preliminary injunction against tribal court jurisdiction, when Godfrey and Kahn wasn't even a party to these documents. And the only relief being sought in tribal court, as the pleadings stand, the only relief they're seeking is a declaratory judgment that the documents are invalid. And the only party in that case is Godfrey and Kahn, who is not a signatory to those documents. And I think the court was right, your honors, on the notion that Godfrey and Kahn should be able to benefit from the forum selection clauses, because his observation was, how can the tribe bring Godfrey and Kahn into a case in tribal court that they shouldn't have even brought to begin with, because they agreed in the underlying documents that the only forums would be federal or state court. How can they bring Godfrey and Kahn into a case like that, and then turn around and claim that Godfrey and Kahn isn't closely related, or inextricably tied up in the transaction, such that they ought to be able to take advantage of the forum selection clause? What sense does that make? So you kind of danced around this, but I want to be clear on this. What was the purpose of your waiver of any argument that the trial court lacked jurisdiction under Montana for purposes of the preliminary injunction? The purpose of it, your honor, was simply that we didn't, first of all, we didn't think we had to get into all of those factual issues because of the forum selection clause. We concluded in looking at this forum selection clause that it was absolutely clear on its face in the bonds and in the tribal agreement that the actions could only be brought in state or federal court exclusive of tribal court, and that as we read the cases, and we've cited all the cases to your honors, and you obviously can read them and come to your own conclusion, but as we read the cases, we should have the benefit of those forum selection clauses because we were closely related and it was a reasonable expectation, reasonably foreseeable, that we could be bound by the forum selection clauses, and therefore we should get the benefit from them. And we like the signatories in this case in California that we cited to you, where they were involved in the negotiation of the agreement. It's hard to imagine someone being more closely related than that to the underlying transaction. So if there's ever a reason to apply this doctrine of closely related, inextricably interwoven to someone who's not a party to the agreement, it seems to me lawyers or other parties who are intricately involved in the situation should be able to benefit from those clauses. And we just concluded that because of our relationship with the tribe and our involvement in the transaction, to get into those issues on the Montana side compared to where these forum selection clauses should have left us from a jurisdictional standpoint, that we were fine. And the idea that there's no federal jurisdiction, Judge Connolly concluded there was no federal jurisdiction, no federal question with regard to Godfrey, because we were relying on the forum selection clause, which is a contract, I think completely overlooks, Your Honors, the fact that the issue of tribal sovereignty or the jurisdiction of the tribal court is a federal question. Clearly, no question about that. And so if you're dealing with a question of a waiver, whether or not these forum selection clauses waive the right there, that seems to us to be clearly a federal question. With our presider's permission, could you comment on the City of Chicago against International College of Surgeons case? How do you think this impacts on it? I'd like to, Your Honor, but I have to tell you I'm drawing a blank on that one. Okay, well it's understandable. Thank you. I apologize. Thank you, Mr. Clark. Thank you very much, Your Honor. Mr. Hanson? Please, the court, I'll address these in reverse order, beginning with Godfrey. The stipulation in the district court that Godfrey is subject to the tribal court's jurisdiction under Montana is dispositive of the issue as it relates to Godfrey. Well, it means that you're subject to the jurisdiction, but shouldn't the district court have gone a little bit further and looked into this whole question of whether or not that had been waived? Whether the jurisdiction had been waived? Yeah. Well, yes, but really that should be subject to the exhaustion rule and should be decided by the tribal court in the first instance. I understand that. The party can't waive the tribal court's jurisdiction. We don't have any power to waive the jurisdiction of the court. We can consent and stipulate in certain contracts, which we did, to the venue of certain places, but we cannot confer or deny a court its jurisdiction that exists separate and apart from any contract. The enforcement of forum selection clauses in a group of contracts that have already been decided by the district court in a prior litigation raise only questions of state law, are not a federal question. They don't present a federal question. The only federal question pending in front of the district court in this case is whether the tribal court has jurisdiction. That's it. Forum selection clauses are not at issue, and to the extent they are, they're being exercised by the litigants in state court. They are getting the forum selection clauses they bargained for. We're not asking them to exhaust those remedies in tribal court at all. But your position is that the forum selection clauses do not cover the contract, right? Well, yes. I mean, Godfrey is not a party to any of the documents, should not be allowed. They say they are. Why can't that be litigated under the supplemental jurisdiction of the district court? If there was a claim to take supplemental jurisdiction over, potentially that would matter, but there's no, there's one claim. Stiefel, Godfrey, Saybrook, Wells-Vargo, all have a declaratory judgment request that the tribal court lacks jurisdiction over them. Nothing else. There is no contract claim. There is no other request for declaratory judgment as to the validity or enforceability of any of these documents to the effect of the forum selection clauses. There is one question that the district court has to answer. Under federal law, does the tribal court have jurisdiction over the plaintiffs in the district court? That's it. Once we show a colorable claim to Montana jurisdiction, the district court has to stay its hand and permit exhaustion. District court didn't see it that way, did it, with respect to Godfrey? I don't understand how the district court concluded that there would be supplemental jurisdiction because there's no other claim. To the extent such a claim might invoke the forum selection clauses and the effect of those private state law governed contracts on us vis-a-vis Godfrey, once again, the tribal court has the competency and the jurisdiction to determine that. That is Mazumdar. That is Mazumdar. Mr. Clark said that Alzheimer controls exhaustion. Well, again, this is the distinction between two courts with competing jurisdiction for the merits of the case, and the court in Alzheimer looked at whether it should get compared Alzheimer to National Farmers Union and Iowa Mutual and say where there is no challenge, where there is no pending court case challenging the jurisdiction of the tribal court, does exhaustion, is exhaustion required under those circumstances? The answer is no. I think that Alzheimer could have been decided the exact same way with no forum selection clauses. Even in the absence of a forum selection clause, there would not have been a reason to require re-litigation of the merits back in tribal court. Our case is very different. The federal district court here is not supposed to be considering the merits of what's pending in state court. It's only supposed to be considering whether there's tribal court jurisdiction. You mentioned Mazumdar and in that case, the court said that the court could enforce a valid forum selection clause even if the clause itself was void. Is there any similar case law with respect to clauses waiving sovereign immunity? Whether the non-forum court would consider the sovereign immunity issue? Yes. I believe Ninegret might be on point on that, although I've not considered that exact question. The non-forum court that looks at the forum selection clauses in the first instance and with respect to the waiver of sovereign immunity and whether it obtains because the documents are valid or invalid, or even if the forum selection clauses, as Mr. Clark suggests, survive voiding or enforceability, still you would go to the tribal court for a determination as the enforceability of the forum selection clauses. It gets to decide that in the first instance because it's not related to tribal court jurisdiction. You have to first decide, the district court has to first decide whether the tribal court has made a colorable claim or whether we have made a colorable claim for tribal court jurisdiction and I submit to you that the evidence is overwhelming even on the truncated record that we have. Well with respect to Godfrey being, you know, subject to some sort of inconsistent judgment because it can be preceded against in tribal court and not the others, if the injunction is vacated as it should be, then that concern is gone and everyone is in equal footing in tribal court. I'd like to talk a little bit about some of the issues Saybrook raised. The extent of Scott Bayless's visit on trust land, there's no rule that says five or six hours is insufficient amount of time. There's no rule that says you have to negotiate. He was there conducting business on trust land and he was conducting business on a financing agreement. Subject to our gaming regulations and subject to our Constitution, we are required by federal law to regulate gaming. We enacted ordinances consistent with that and consistent with a way to regulate gaming. We can regulate the transaction. They came on to the trust land, stifle under non-purchasing. But you did agree, did you not Mr. Hanson, that no negotiations occurred? There are stipulations in the district court as to what occurred. We don't have a full record on that but even if they didn't engage in negotiations, Bayless was there to determine whether the casino was adequate security before he was willing to enter into the bond transaction. It was he was there to be regulated and subsequently they did enter into the bond transaction. It's a highly regulated area on the I visited the tribal land once, right, and in terms of the allegations and the complaint, there were really no allegations in the tribal court complaint that arose out of that visit. Well, the question is... Specifically. Not specific to that visit, no, but there's more than that. Saybrook also has a security interest in the tribal, in the casino assets and they have a right that Saybrook enjoys and they have a right under those documents to enter the trust land, seize casino assets. They have that right currently existing in a document and under our right to exclude in our treaty rights and our regulatory rights, we can challenge those rights. It's better to do it now in a prospective looking declaratory judgment action in tribal court than to wait for them to enter the trust land and be escorted to the reservation borders. We should be able to avoid that by resort to the tribal court. There's also, you know, so you've got a visit to the tribe, you've got security interests currently in tribal assets on trust land in the casino and you've got the ability in these documents as they currently exist to enter trust land and seize assets. We have a right to regulate that relationship in those parties. I see my time is up. Thank you, Mr. Hinson. Our thanks to all counsel. The case is taken under advisement and the court will proceed to the second case.